During the early part of August, 1941, the defendant, A.J. Birou, was severely injured by gun-shot wounds in the leg, face and eye, and was taken to the Charity Hospital in New Orleans for emergency treatment. The house surgeon called upon the plaintiff, Dr. George M. Haik, to take charge of the treatment of the defendant's eyes. Dr. Haik is a specialist in diseases and surgery of the eye and is an instructor in ophthalmology at Tulane University.
He found fragments of glass in the cornea of Birou's eye but, because of his general physical condition, was unable immediately to do anything more than give emergency treatment, but several days later took the patient to the operating room and removed several very small pieces of glass. This operation was repeated two or three times in the clinic at the Charity Hospital, and later Birou was removed to Mercy Hospital.
He had been originally taken to the Charity Hospital only in the emergency, and not as a charity patient, and therefore he paid such charges as are by law required to be paid by patients who are financially able to pay.
At the Mercy Hospital additional services were rendered to Birou by Dr. Haik, and sometime later, after he had left Mercy Hospital, Birou paid three or four additional visits to Dr. Haik at his office. The doctor then rendered a bill for $250, which Birou refused to pay, saying that he was willing to pay a considerably smaller amount. This the doctor refused to accept and this suit is the result.
There was judgment below for $100, and plaintiff has appealed.
It is conceded that Dr. Haik rendered valuable and successful services to Birou but it is asserted that most of those services were rendered while Birou was an emergency patient in the Charity Hospital, and that no part of the doctor's charge may be based on those services. Dr. Haik concedes that he cannot base any part of his charge on services rendered at the Charity Hospital but maintains that no part of the charge is based on those services and that the entire amount claimed is proper compensation for the services rendered in the Mercy Hospital, and later on in his office. He says that at the Mercy Hospital he removed the bandage which he had placed on Birou's eyes at the Charity Hospital and that "I visited the patient between six and eight times * * * at the Mercy Hospital." He says, too, that later, on four occasions Birou visited his office, and that on two of those visits he performed operations, removing "splinters" of glass about a millimeter in length, and that each of these two operations required about 30 minutes.
Defendant says that the visits at the Mercy Hospital were merely to ask the *Page 389 
nurse whether the patient was progressing satisfactorily and that the visits at the office were not so frequent as the doctor declares, and that on no one of them was more than 5 minutes required for the minor treatment given him by the doctor.
One of the nurses who attended Birou at the Mercy Hospital, and who was called as a witness by Dr. Haik, says that she knows of no treatment rendered Birou by Dr. Haik at that institution except the removal of the bandage and that after that was done the doctor did not even come into the room except to say: "Good morning" and to ask Birou how he was getting along.
It was stipulated that if the other nurse who had attended Birou had been available as a witness she would have testified to the same effect.
Mrs. Birou states that while Birou was in the Mercy Hospital she spent a large part of each day with him, and that she did not know Dr. Haik, and had never seen him at all in the Mercy Hospital, and had met him for the first time when he testified in this case in the court below.
Under all the circumstances, we are constrained to believe that while the services rendered to Birou were of great value, Dr. Haik's realization of the fact that there was great danger that Birou might lose his sight and that his services prevented this disaster obscured his recollection of the fact that by far the most important of those services were rendered by him while Birou was a patient in the Charity Hospital. And, as we have already said, his counsel concede that for those services which were rendered in the Charity Hospital there can be no recovery. We think the record shows that, at most, two minor operations were performed in Dr. Haik's office, and one or two other visits were made there at which time the condition of the patient's eye was inquired into by Dr. Haik, and that almost no services were rendered in the Mercy Hospital.
The judge a quo seems to have reached this conclusion for his allowance of $100 for services indicates that he believed that most of the services had been rendered in the Charity Hospital. We find nothing in the record to justify a different conclusion.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.